MARLIN OIL CORPORATION, Appellant,

v.

CORPORATION COMMISSION OF the STATE OF OKLAHOMA, Appellee.

No. 48501.

Supreme Court of Oklahoma.

April 5, 1977.

George, Kenan, Robertson & Lindsey by James W. George, Oklahoma City, for appellant.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, by C. Harold Thweatt, Oklahoma City, Harry O. Hickman, Gordon D. Ryan, Denver, Colo., for appellee.

BERRY, Justice:

The facts on appeal are rather simple and involve the power and responsibility of Oklahoma Corporation Commission [Commission] to protect correlative rights of mineral owners. Specifically, Amoco Production Company [Amoco] drilled a gas well [Veith No. 1] in a 640 acre Veith drilling and spacing unit of Mississippi Chester Lime formation located in Kingfisher County. Veith No. 1 was assigned a monthly production allowable to regulate production of gas from Mississippi Chester Lime formation, a common source of supply, in order to protect correlative rights of mineral owners; allowables were determined pursuant to field rules previously established by Commission. However, from date of drilling, August 1967, to date well was plugged, January 1974, Veith No. 1 never achieved allowable production. Amoco sought and received permission to drill another well in the unit, which it completed in January 1974. Veith No. 2, a much better well than Veith No. 1, produced substantial overages from January 1974 to November 1974.

On December 24, 1974, Amoco filed an application with Commission to reinstate cancelled Veith No. 1 accumulated underages. Commission determined "underages accumulated by Veith No. 1 well was due partly to the failure of the purchaser to take sufficient gas from the well, but was due in large part to the inability of the well to produce its full allowable." Finding it impossible to allocate precisely under production between failure and inability of Veith No. 1 to produce, Commission nonetheless sought an equitable method to protect correlative rights of mineral owners. Commission resolved the matter by reinstatement of last six months of underage

attributable to Veith No. 1 and credited them to Veith No. 2 overages; and so entered its order. Marlin Oil Corporation [Marlin], an operator of offsetting wells in Mississippi Chester Lime formation, brings this appeal for review of Commission's order.

Marlin contends production allowables are allocated to a particular well and, therefore, underages from one well within a drilling and spacing unit may not be assigned to another pursuant to applicable field rules. In other words, there is no basis for transferring an allowable from one well to another well as was done in the instant matter. Marlin has shown no authority supporting their view nor have we found any. We are not persuaded.

Marlin places great reliance upon Oklahoma Corporation Commission Oil and Gas Rule [O.C.C.—O.G.R.] § 2–320 and field rules, Order No. 47925, governing production of gas from Mississippi Chester Lime formation. Marlin argues all portions of the field rules refer to allowables to individual wells by such language as "each well" "the well" "said well" "individual well" and contain no specific provision for transferring underages accumulated by one well to another. Further, O.C.C.—O.G.R. § 2–320 provides:

> "An allowable shall be assigned to *each well* in each Special Allocated Pool in accordance with the special pool rules." [emphasis added]

Marlin, thus, concludes intent of Commission was to determine an allowable for each individual well.

■ Marlin's view is too narrow, however. Commission is charged with responsibility to prevent waste in oil and gas production and to protect correlative rights of mineral owners. 52 O.S.1971 § 87.1(a). Consistently, O.C.C.—O.G.R. § 1–102(a) identified, inter alia, [1] prevention of waste, [2] greatest ultimate recovery from Oklahoma oil and gas reservoirs, and [3] protection of correlative rights of all interested parties policy considerations behind implementation of Oil and Gas Rules and field rules. Therefore, these fundamental

policy considerations should be borne in mind when applying Commission rules to a particular situation. Moreover, should there be substantial evidence to support Commission action, this Court will not reverse.

In the instant matter, Commission specifically found Veith No. 1 was incapable of adequately and sufficiently draining the gas underlying the drilling and spacing unit and Veith No. 2 was authorized "in the interest of securing the greatest ultimate recovery of gas and gas condensate from the . . . common source of supply, the prevention of waste and protection of correlative rights of all interest owners in the area . . . ." Commission Order No. 99743. See O.C.C.—O.G.R. § 1.505. Clearly, a central purpose of Veith No. 2 authorization was to permit Amoco to produce its fair share; in reinstating Veith No. 1 underages, Commission was simply trying to place Amoco in nearly the same position it would have been had Veith No. 1 been an adequate producer. Moreover, a Commission engineer testified:

> "The Department policy in the past has always been since these field rules all are . . . based on acres, and (a) proper well in the acreage, that the allowable was assigned to a well . . . but it (is) also assigned to the unit, to 640 acres. Also many, many times, we have had a second well drilling in a 640 acre drilling and spacing unit in an allocated pool and the well has been given a single allowable to be divided between the two wells. This has been the policy for a long, long time. Secondly, on replacement wells, again as long as I have been here they have followed the policy that the underage or overage of the previous well goes to the replacement well on the unit. Again on the basis that the field rule called for a 640 acre unit with a single well in a proper location."

The engineer further indicated the policy extended to special allocated pools and had never been challenged. Therefore, in the instant matter, Commission did nothing more than apply long standing policy in its

construction of field and Oil and Gas Rules in order to achieve fundamental objectives of preventing waste and protecting correlative rights of interested parties; and used O.C.C.—O.G.R. § 2–320(c) as a guide in determining the appropriate amount of underage to reinstate. See Finding No. 7, Commission Order No. 111992. We conclude there is substantial evidence to support Commission's order.

 Commission's decision can be sustained on the foregoing rationale and it is unnecessary to give extended consideration to Marlin's second contention. Marlin contends Commission erroneously permitted reinstatement of six months production underages of Veith No. 1 in relying upon O.C.C.—O.G.R. § 2–320(c). That section, in pertinent part, provides:

> "Any cancelled underage may be reinstated administratively by the Director of Conservation to any well in any overproduced status, within six (6) months after cancellation by application on Form 1010."

We hold § 2–320(c) does not establish an exclusive method of reinstatement of underages, but merely provides a permissive, administrative method for reinstatement; and Marlin's objection on this basis is without merit.

Affirmed.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN and SIMMS, JJ., concur.

DOOLIN, J., concurs in result.

BARNES, J., dissents.